UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY IANNITELLI,              )<br>                                              )<br>        Plaintiff,                      )<br>                                              )<br>    v.                                    )    Civil Action No. 05-0975 (GK)<br>                                              )<br>UNITED STATES OF AMERICA, )<br>                                              )<br>                                              )<br>        Defendant                   )<br>                                              ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER DIRECTING PLAINTIFF TO SUBMIT TO AN INDEPENDENT MEDICAL EXAMINATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Defendant submits this memorandum in response to Plaintiff's Opposition to Defendant's Motion For An Order Directing Plaintiff To Submit To An Independent Medical Examination,   ( Opposition ).  Defendant continues to request, pursuant to Federal Rule of Civil Procedure 35,  an Order directing Plaintiff to attend an independent medical examination ( IME ) to be conducted by Defendant's expert.

**ARGUMENT**

    A.   AN INDEPENDENT MEDICAL EXAMINATION IS NECESSARY

In April 2006, this Court placed this case on a mediation track. See Dkt. No. 15. Towards that end, this Court Ordered that an IME and a deposition of the Plaintiff  take place before the mediation in order to aid the parties in settlement negotiations.  Id.  In accordance with the Court's Orders, Plaintiff's Independent Medical Examination  was

arranged.  As detailed in Defendant's motion, and unrebutted by Plaintiff, at the time of Plaintiff's IME, neither Plaintiff nor her treating physicians alleged that Plaintiff's injury included Thoracic Outlet Syndrome (TOS).  It was only <u>after</u> the Court-ordered deposition and IME that Plaintiff presented her new allegations concerning TOS.  At this stage, if mediation is to be successful, Defendant must be able to evaluate its position vis-a-vis Plaintiff's alleged injuries.[1]  As indicated in the unrebutted declaration of Dr. Neuren,¶¶ 4-5 , attached to Defendant's Motion, Defendant cannot simply rely on Plaintiff's magnetic imaging photographs.   It is critical that the Defendant be allowed to conduct a standard direct examination to assess the signs of neurological and vascular compromise that should be present in patients suffering from TOS. *Id*. ¶ 4.

Specifically, while essentially conceding that her new allegation of TOS is in "controversy," Plaintiff instead argues that Defendant has failed to satisfy the "good cause" requirement of Rule 35(a).  This proposition is mertiless.  As the Supreme Court explained in *Schlagenhauf  v. Holder*, 379 U.S. 104 (1964),   "...there are situations where the pleadings alone are sufficient to meet [the good cause] requirements.  A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for

---

[1] While Plaintiff claims that she has no new "complaints" she does not deny that she is asserting a new theory for the extent of her injuries.  It is undisputed that, for the first time in this litigation, Plaintiff now alleges that as a result of a 5 mile per hour incident, she has developed TOS.

an examination to determine the existence and extent of such asserts injury." *Id.* at 119 (citations omitted) (emphasis added).  Indeed, courts have consistently held that an IME is appropriately ordered when a party has placed her physical mental or emotional condition at issue in litigation.  In *Smith v. Koplan*, 215 F.R.D. 11 (D.D.C. 2003), Magistrate Judge Facciola explained his decision to order an IME :

> " ...plaintiff claims that she suffered 'physical, emotional and economic damages' as a direct result of Defendant's discriminatory behavior.'  Plaintiff further alleges that she has symptoms of depression and anxiety that have left her 'hopeless about the future' and that her 'life [has] been a failure.'  Moreover, she now asserts that 'these and other symptoms [have] continue[d] to persist for almost three years now.' This statement alone is evidence that plaintiff has placed an ongoing mental illness in controversy, providing Defendant with good cause to request a mental examination."  *Id.* at 13 (record citations omitted).[2]

This judicial district, then, appears to have adopted a per se rule that a plaintiff creates good cause for the Court to order an IME if the plaintiff places his or her physical or mental condition into controversy.  This is entirely consistent with the principle that the discovery provisions of the Federal Rules of Civil Procedure are intended to allow litigants to fully develop and crystalize concise factual issues before trial and the Supreme Court's admonishment that the discovery rules should be broadly

---

[2]*See also, Chiperas v. Rubin*, 1998 WL 765126 (D.D.C. 1998) (IME of plaintiff ordered in Title VII action because plaintiff contemplated use of expert to substantiate her claim that she suffered harm at the hands of the Defendant); *Shepherd v. American Broadcasting Companies*, 151 F.R.D. 194 (D.D.C. 1993) (employee who seeks damages for emotional pain suffered as a result of her employer's actions has placed the existence and extent of her alleged injuries in controversy, giving the employer good cause to seek on order for her mental examination), vacated on other grounds, 62 F.3d. 1469 (D.C. Cir. 1995).

and liberally construed. *See Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As mentioned above, Plaintiff has not disputed that she has placed the cause, nature, significance and duration of her alleged past, present and future injuries into controversy in her complaint. On the face of that complaint, then, and because Plaintiff now adds to her allegations of injury, good cause exists to order the Plaintiff to submit to an IME.

The remainder of Plaintiff's arguments boil down to an attempt to argue that the initial orthopedic examination is all that is necessary to assess allegations of TOS. This argument is equally meritless. First, Plaintiff's logic is devoid of any legal support for the suggestion that the prior orthopedic examination is an adequate substitute for an examination to detect TOS. To the contrary, this Court has determined that when new allegations surface that render previous examinations obsolete, new examinations are appropriate. *See, Doe v. District of Columbia*, 229 F.R.D. 24(D.D.C. 2005).[3] The existing record is insufficient to ascertain the nature and extent of the alleged TOS injuries that Plaintiff now claims. Defendant has supplied the Court with a sworn declaration

---

[3] In *Doe v. District of Columbia*, 229 F.R.D. 24(D.D.C. 2005), plaintiff did not hire an expert. The Court nonetheless found that an IME was required because plaintiff placed his condition "clearly in controversy" by alleging that the city's alleged negligence was the direct and proximate causes of his injuries. The Court went on to state that when there is no showing of harm resulting from an additional IME and the information about plaintiff's condition is "insufficient" a new examination involving a "fresh round of tests by a new doctor" is appropriate. 229 F.R.D. at 26-27. In this case, there has been no argument or demonstration that an additional examination would cause any harm to the Plaintiff.

supporting and explaining this proposition. *See* Declaration of Dr. Alan Neuren attached to Def. Mot. Plaintiff has failed to provide any support, legal or medical for her claims to the contrary.

Further, as explained in Defendant's Motion, the IME is necessary to determine whether and to what extent the alleged TOS injury was caused by Defendant's action. Def.'s Mot. at 6. Moreover, even though this case is in a mediation posture, an IME is critical in order for Defendant to intelligently assess its exposure to the various theories of liability asserted. Additionally, the content of Dr. Danzinger's examination does not allow for the analysis necessary to defend against Plaintiff's claims of TOS. On the very top of Dr. Danzinger's report it states that his practice area is limited to "ORTHOPEDIC SURGERY AND MEDICINE" *See Id*. at Ex. 1 (emphasis in original). Nothing in Dr. Danzinger's report indicates that Plaintiff was examined by him for the purposes of assessing her neurological health. Indeed, nothing in Plaintiff's medical history, as presented to Defendant, indicated a finding of TOS by her first neurologist.[4] *Id.* at 1. Defendant, therefore focused on the only claims present, the orthopedic complaints of the Plaintiff. As a result, Defendant was only able to ascertain an incomplete snapshot of Plaintiff's claims and her medical condition as it related to those claims. Defendant has a right to a new IME in order to develop a complete record of the nature and extent of

---

[4]Prior to being examined by Dr. Danzinger, Plaintiff was under the care of Dr. Debs, a chiropractor and Dr. Kendel, a neurologist near her home in Naples, Florida. It was not until Plaintiff traveled to California, after Dr. Danzinger's examination, that she located a neurologist who first made the TOS diagnosis.

Plaintiff's injuries that resulted from the incidents alleged in this litigation.

Just as the records of Plaintiff's previous medical examinations are insufficient, the medical records supplied by Plaintiff's expert and their depositions are also insufficient for Defendant to ascertain the nature and extent of the injuries that resulted from the incidents alleged in this litigation. As detailed in Dr. Neuren's sworn declaration, the procedures necessary to detect TOS are very specific and mandate direct examination of the patient in addition to the appropriate magnetic imaging techniques. Neuren Dec at ¶4.[5]

### B. NO OTHER PERSON SHOULD BE PERMITTED AT THE INDEPENDENT MEDICAL EXAMINATION

Defendant reasserts its position that neither Plaintiff' s attorney (or any other third party), nor a recording device, should be permitted during the IME. Plaintiff offers no credible rebuttal to Defendant s position. Plaintiff's counsel did not attend the initial

---

[5] In addition, the primary authority that Plaintiff relies on in support of her position that this motion should be denied is not controlling authority in this District and actually supports Defendant's argument. Plaintiff cites *Vopelak v. Williams*, 42 F.R.D.387, 389 (D.C. Ohio 1967), for the proposition that a "stronger showing of necessity" must be shown for a "second" examination to be authorized. The court in that case found that where there has been a sufficient "change in circumstance," the additional IME was appropriate. *Id.* In the instant case, Defendant has shown and Plaintiff has not contested that there has been a dramatic change of circumstance, namely that the Plaintiff has added to her allegation of injury. *See also Marshall v. Peters*, 31 F.R.D. 238 (D.C.Ohio 1962) ( where court found that additional medical examination was necessary when distinct injuries (cervical spine injury and heart condition) called for examination by distinct medical specialties (orthopedic and heart specialists). In this case, at the very least there are distinct alleged injuries (orthopedic and neurological) that need to be addressed by distinct specialties ( orthopedist and neurologist specialists)).

orthopedic examination with Dr. Danzinger. There has been no rationale put forth to permit either counsel in the examination room. Defendant has proposed that Dr. Richard Katz, a suitable qualified expert, conduct the IME in a one-on-one examination at his office.[6]

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that its motion be granted and that Plaintiff be ordered to attend and cooperate in an IME, to include a neurological examination concerning allegations of Thoracic Outlet Syndrome. Defendant further requests that the Court Order that no counsel for either side be present during said examination.

Respectfully Submitted,

_____
 JEFFREY A. TAYLOR, BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney

---

[6] Plaintiff also argues that every aspect of the examination needs to explained in Defendant's motion before the Court can Order the IME. However, this Court in *Doe,* found that such specification of the exam is not necessary at this stage, and that the specifications of the exam may be left "to the expertise of and judgment of the professional charged with conducting the examination." 229 F.R.D. at 28.

>
> _____
> BENTON G. PETERSON,  Bar #1029849
> Assistant United States Attorney
> Judiciary Center Building
> 555 4th Street, N.W.  Civil Division
> Washington, D.C.  20530
> (202) 514-7238 514-8780 (Facsimile)
> Benton.Peterson@usdoj.gov